### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **MARIO LOPEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION NO. 1:16-09150** |
| **v.** | ) | |
| | ) | |
| **BARBARA RIKARD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

On September 27, 2016, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document No. 1).[1] In his Petition, Petitioner complains that his due process rights were violated during disciplinary proceedings causing a loss of a liberty interest in his good time credit. (Id.) Specifically, Petitioner complains that he was sanctioned to a loss of good time conduct by a "DHO that was not employed by the FBOP." (Id.) Petitioner explains that the disciplinary action occurred while he was housed at the Big Spring Correctional Center ["BSC"], which is a contractor-owned and operated facility located in Texas. (Id.) Petitioner argues that "because the DHO was not employed by the FBOP, [the DHO] did not have authority to sanction him to a disallowance of good conduct time. (Id.) As relief, Petitioner requests that the Court fully restore Petitioner's disallowed good conduct time. (Id.) As an Exhibit, Petitioner attaches a copy of the Incident Report charging Petitioner with Possession of a Hazardous Tool in violation of Prohibited Act Code 108. (Id., p. 10.)

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

By Order entered on October 11, 2016, the undersigned ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 5.) On November 17, 2016, Respondent filed his Response to the Order to Show Cause. (Document No. 8.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner failed to exhaust his administrative remedies" (<u>Id.</u>, pp. 2 – 3.); and (2) "Petitioner's claim is moot as the Incident Report was reheard by a BOP DHO" (<u>Id.</u>, pp. 3 - 4.).

As Exhibits, Respondent attaches the following: (1) The Declaration of Sharon Wahl (<u>Id.</u>, pp. 7 - 8.); (2) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated November 16, 2016 (<u>Id.</u>, p. 10.); and (3) A copy of Petitioner's "Inmate Discipline Incident Report History" dated November 16, 2016 (<u>Id.</u>, p. 12.).

By Order and Notice entered on November 21, 2016, the undersigned advised Petitioner of his right to file a Reply to Respondent's Response. (Document No. 9.) Petitioner, however, has failed to file a Reply.

## **<u>DISCUSSION</u>**

**1.      Failure to Exhaust Administrative Remedies:**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. <u>See</u> <u>McClung v. Shearin</u>, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(<u>citing</u> <u>Carmona v. Bureau of Prisons</u>, 243 F.3d 629, 634 (2nd Cir. 2001)); <u>Pelissero v. Thompson</u>, 170 F.3d 442, 445 (4th Cir. 1999); <u>Fuller v. Rich</u>, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to

correct their own errors before being haled into Court.  See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910,166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response

3

is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In the instant case, Petitioner acknowledges that he failed to fully exhaust his administrative remedies. (Document No. 1, p. 2.) Additionally, Respondent attaches a copy of Petitioner's "Administrative Remedy Generalized Retrieval" exhibiting that Petitioner has never filed any administrative remedies about any matter. (Document No. 9, p. 10.) Exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that exhaustion should not be excused simply because an inmate anticipates that he will be unsuccessful in the exhaustion process. See Thethford Properties IV Ltd. Partnership v. U.S. Dept. of Housing & Urban Development, 907 F.2d 445 (4th Cir. 1990)("Absent a clear showing that an administrative agency has taken a hard and fast position that makes an adverse ruling a certainty, a litigant's prognostication that he is likely to fail before an agency is not a sufficient reason to excuse the lack of exhaustion."); Dagley v. Johns, 2012 WL 2589996, * 2

(E.D.N.C. July 3, 2012)("[A] petitioner's conclusory prediction of failure is not sufficient to excuse his lack of administrative exhaustion."); Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy)(finding that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark"); Willis v. Warden, 2010 WL 1137570 (D.Md. March 19, 2010)("Allowing a petitioner to avoid the administrative process based on a mere conclusory assertion 'would allow the futility exception to swallow the exhaustion.'"). To the extent Petitioner contends that exhaustion was futile, there is no clear showing that the BOP has "taken a hard and fast position that makes an adverse ruling a certainty."[2] Based on the foregoing, the undersigned finds that Petitioner is not excused from exhausting his administrative remedies and his Petition should be dismissed. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Petitioner's claim.

**2.      Non-BOP DHO claim rendered moot by rehearing:**

Petitioner argues that he was improperly sanctioned to a loss of good conduct time by a DHO, who was employed by a private corporation. (Document No. 1.) Petitioner appears to contend that his due process rights were violated because only a BOP employee has authority to take disciplinary action against him. (Id.)

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a

---

[2] The record reveals that the BOP scheduled Petitioner's discipline matter to be reheard by a BOP DHO, and the rehearing has been conducted at FCI McDowell. As noted by Respondent, if Petitioner had "availed himself of the required administrative remedy process, he would have likely obtained relief and a court filing would not have been necessary." (Document No. 8, p. 3.)

legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94

S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); also see Mackey v. Federal Bureau of Prisons, 440 Fed.Appx. 373, 374-75 (5th Cir. 2011)("Collateral relief is not available for failure to comply with the formal requirements of rules in the absence of any indication that the petitioner was prejudiced."); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin, supra, 515 U.S. at 481- 482, 115 S.Ct. at 2293.

In the instant case, Petitioner does not dispute that he received all of the minimum due process safeguards set forth in Wolff. Specifically, Petitioner does not deny that he received all documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to present a defense to those charges. Petitioner, however, contends that his rights were violated because the BOP failed to comply with its own regulations requiring sanctions to be imposed by an employee of the BOP. The *Accardi* Doctrine provides that when an agency fails to follow its own procedures and regulations, that agency's actions are generally invalid. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); also see Nader v. Blair, 549 F.3d 953, 962 (4th Cir. 2008); United States v. Morgan, 193 F.3d 252, 266-67 (4th Cir. 1999)(Having adopted a policy or regulation, an agency is bound to apply such and its failure to do so can create a due process violation where prejudice has

resulted). "The crucial question is whether the alleged conduct . . . deprived petitioner of any of the rights guaranteed him by the statute or by the regulations issued pursuant thereto." Accardi, 347 U.S. at 265, 74 S.Ct. at 502; also see Von Kahl v. Brennan, 855 F.Supp. 1413, 1420-23 (M.D.Penn. May 27, 1994)(Where the minimal requirements of due process have been met, the petitioner must demonstrate that the failure to follow the regulation resulted in prejudice; it is insufficient to demonstrate a technical violation where no prejudice as occurred).

In 2011, the Code of Federal Regulations was revised to clarify that the Inmate Discipline Program applies to all prisoners in BOP custody, including inmates held in a contract facility. See 28 C.F.R. § 541.2. The regulations defined the disciplinary hearing officer ["DHO'] as "an impartial decision maker who was not a victim, witness, investigator, or otherwise involved in the incident." 28 C.F.R. § 541.8(b). The regulations, however, provide that the purpose of the Inmate Discipline Program is to help "ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing *Bureau staff* to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1(emphasis added). "Staff" is defined as "any employee of the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1(b)(1). Although the regulations do not clearly require the DHO to be an employee of the BOP, the regulations do require that sanctions be imposed by "Bureau staff."

In the instant case, Petitioner's Incident Report has been reheard by a DHO employed by the BOP. The Incident Report was reheard before a BOP DHO at FCI McDowell on November 10, 2016. (Document No. 8, p. 12.) The BOP DHO determined that Petitioner committed the prohibited act of Possession of a Hazardous Tool in violation of Prohibited Act Code 108. (Id.) Therefore, the sanctions imposed following the rehearing were clearly imposed by a "Bureau staff" in accordance with 28 C.F.R. § 541.1. Article III, Section 2 of the United States

8

Constitution provides that federal Courts may adjudicate only live cases or controversies. See Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); Nakell v. Attorney General of North Carolina, 15 F.3d 319, 322 (4th Cir.), cert. denied, 513 U.S. 866, 115 S.Ct. 184, 130 L.Ed.2d 118 (1994). This means that the "litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. "If intervening factual . . . events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." Ross v. Reed, 719 F.2d 689, 693-94 (4th Cir. 1983). Accordingly, Petitioner's claim that he was improperly sanctioned by a non-BOP DHO is rendered moot by his rehearing.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 1) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and

Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: February 7, 2017.

Omar J. Aboulhosn
United States Magistrate Judge